**MEDICAL CENTER AT BOWLING GREEN, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**Nos. 82–1437, 82–1566.**

United States Court of Appeals, Sixth Circuit.

Argued June 16, 1983.

Decided Aug. 4, 1983.

Herman L. Allison (argued), Constangy, Brooks & Smith, Atlanta, Ga., for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, Miriam Szapiro (argued), N.L.R.B., Washington, D.C., for respondent.

Before KEITH and MERRITT, Circuit Judges and ALLEN,* Chief Judge.

PER CURIAM.

This case is before the court upon the petition of the Medical Center at Bowling Green to review and set aside an order of the National Labor Relations Board. The order, which is reported at 261 N.L.R.B. 120 (1982), directs the Medical Center to bargain with a Nursing Union. The Board cross-petitions for enforcement of its order.

The Medical Center at Bowling Green (the Center) is a Kentucky corporation which operates a non-profit hospital. The present controversy arose from a union organizing drive by the hospital's nursing employees. The organizing campaign began on March 5, 1981 when the Kentucky Nurses Association filed a representation petition with the Board seeking certification as the exclusive bargaining representative of the Medical Center's registered nurses. On March 18, the Board conducted a hearing on the petition to determine the scope of the bargaining unit. At that time, the Center raised questions regarding whether certain job classifications should be included or excluded from the unit. Of particular concern were those employees classified as licensed practical nurses, emergency room registered nurses, home care registered nurses and unit directors. With respect to the unit directors, the Center took the position that they are statutory supervisors and should be excluded from the bargaining unit.

On April 16, 1982, the Regional Director issued a Decision and Direction of Election in which he defined the unit as follows:

> All registered nurses employed by [the Center] at its Bowling Green, Kentucky hospital, excluding all other employees, all office clerical employees, and all guards and supervisors as defined in the Act.

The Director further stated: "Inasmuch as the evidence with regard to the supervisory status of unit directors is contradictory in nature, and is, in some respects, lacking in detail, I am unable to determine with any degree of certainty whether unit directors are supervisors within the meaning of Section 2(11) of the Act." Based on the foregoing, the decision specified that the seventeen unit directors be permitted to vote in the election with the proviso that their vote would be subject to challenge.

The Center filed a request on April 27, 1981 for a review of the Regional Director's Decision and Direction of Election. An objection was specifically raised to that part of the decision which permitted unit directors to vote subject to challenge. On May 14, 1981, the Board denied the Center's

---

* The Honorable Charles M. Allen, Chief Judge, United States District Court for the Western District of Kentucky, sitting by designation.

request, finding that no substantial issues were presented which warranted review. A secret ballot election was held that same day. The ballots revealed that ninety-four voters favored representation by the Association, and that twenty-two voters had not favored representation. There were twenty-seven challenged ballots.

Shortly thereafter, the Center filed a timely objection to the election. The Regional Director conducted an administrative investigation. On June 30, 1981, the Regional Director issued a Supplemental Decision and Certification of Representative in which he overruled the Center's objections to the election. A request for review of the supplemental decision was denied.

On October 12, 1981, the Association wrote a letter to the Center requesting collective bargaining. The Center did not comply with the request. An Unfair Labor Practice charge was filed by the union on January 13, 1982. The Regional Director issued a complaint fourteen days later. In its answer, the Center admitted that it refused to bargain, but contended that the Association was improperly certified.

A decision and Order was issued on May 12, 1982 finding that the Center violated Section 8(a)(5) and (1) of the Act by refusing to bargain with the union. The Board ordered the Hospital to cease and desist from any unfair labor practices that interfere with, restrain or coerce employees in the exercise of their statutory rights. The Order also affirmatively required the Center to bargain with the union upon request.

In challenging the Board's order, the Center raises several issues with respect to the Regional Director's failure to determine the supervisory status of unit directors. First, the Center argues that unit directors are clearly supervisors within the meaning of Section 2(11) of the Act. The Center maintains that 355 employees are divided into nursing units. Each unit of twelve to sixteen employees is supervised by a unit director. According to the Center, some of the director's duties include scheduling, disciplining, granting leave and evaluating

employees. However, the Regional Director found that the contradictory nature and lack of detail of the evidence regarding the unit directors' supervisory status rendered him unable to determine whether the unit directors were, in fact, supervisors. As the Regional Director recounts, there was conflicting evidence regarding whether the directors actually exercised basic supervisory functions such as granting leave, disciplining employees and evaluating in a manner that might affect their job tenure.

Given the Board's administrative expertise in resolving disputes concerning supervisory status, its decisions will usually not be disturbed absent an abuse of discretion. *See NLRB v. Corral Sportswear Co.,* 383 F.2d 961, 965 (10th Cir.1967), *cert. denied,* 390 U.S. 995, 88 S.Ct. 1196, 20 L.Ed.2d 94 (1968). Because the record does not reveal a manifest abuse of that discretion, the Board's decision to allow the unit directors to vote subject to challenge is appropriate. Such a practice enables the Board to conduct an immediate election where, as here, it is undecided about the eligibility of a relatively small number of individuals whose votes may not affect the election. The question of eligibility may be resolved after the election through the Board's unit clarifying procedure.

Next, the Center argues that the Regional Director erred by failing to set aside the election. Here, the Center's argument is twofold. The first argument is premised on the fact that "supervisors" are not permitted to campaign on behalf of a union during Board conducted elections. Such activity destroys the so-called "laboratory conditions" that should exist to effectuate a fair election. *NLRB v. Metropolitan Life Ins. Co.,* 405 F.2d 1169 (2d Cir. 1968). The Center asserts that the presence of "alleged" supervisors in the campaign created an atmosphere of pressure and coercion. They further maintain that the participation of supervisors had a coercive effect on the election which violated the Section 7 rights of employees to refrain from union activities.

Secondly, the Center argues that while supervisory participation on behalf of a union is prohibited, an employer has the right to require that supervisors assist, as agents of the employer, in its legitimate opposition to the union. Therefore, it contends that the Board's failure to determine supervisory status also denied the Center of its right to utilize supervisors in its opposition to unionization.

In support of its claims, the Center proffered evidence to the Regional Director indicating that a handful of unit directors made expressions of support for the Association. The Center presented evidence that one unit director accused another director of disloyalty for failing to support the unionization of the Nurses Association. This conversation apparently occurred in the presence of two employees. The Center further stated that another unit director told a non-employee that she would do whatever she could to support the Association. No employees were present when this statement was made. Evidence was also presented that a third unit director told an employee about two weeks before the election that she could see where having a union would help the nurses. Lastly, the Center proffered evidence that one employee was under the impression that a house director supported the union. The employee, however, could not recall what gave her this impression.

Following a review of the evidence, the Regional Director declined to set aside the election based on its finding that there was no substantial evidence of union support expressed by unit directors. Moreover, the Regional Director found that the Center effectively presented its anti-union position through the dissemination of handouts and the use of upper level supervisors to engage in individual conversations with employees. We agree with the Regional Director's findings. The evidence of unit directors' participation was minimal. It certainly did not indicate the presence of any coercion.

■ Finally, the Center contends that the Board erred in reviewing the Regional Director's Decision. In this regard, the

Center argues that the Board's certification and decision was made without the benefit of a hearing or the benefit of the full record relied upon by the Regional Director. Hence, it claims that the Board's decision to issue a certification must be considered an abuse of discretion. In advancing this argument, the Center relies upon *Prestolite Wire Division v. NLRB,* 592 F.2d 302 (6th Cir.1979) and its progeny. *See ATR Wire & Cable Co. v. NLRB,* 671 F.2d 188 (6th Cir. 1982); *NLRB v. Curtis Noll Corp.,* 634 F.2d 1027 (6th Cir.1980). In *Prestolite,* this Court found that the Board abused its discretion by certifying a union without the benefit of a hearing or a full record compiled by and relied upon by the investigative officer. *Prestolite,* 592 F.2d at 306.

However, the Board correctly notes that there are situations where the objections are so insubstantial that they may be resolved on the basis of the administrative investigation. In fact, *Prestolite* also states:

> It is incumbent upon the party seeking a hearing to clearly demonstrate that factual issues exist which can only be resolved by an evidentiary hearing. The exceptions must state the specific findings that are controverted and must show what evidence will be presented to support a contrary finding or conclusion. Mere disagreement with the Regional Director's reasoning and conclusions do[es] not raise substantial and material factual issues.... To request a hearing a party must, in its exceptions, define its disagreements and make an offer of proof to support findings contrary to those of the Regional Director. [Citation omitted].

*Prestolite,* 592 at 306 *quoting NLRB v. Tennessee Packers, Inc.,* 379 F.2d 172, 178 (6th Cir.) *cert. denied,* 389 U.S. 958, 88 S.Ct. 338, 19 L.Ed.2d 364 (1967). Our review of the record convinces us that the claims raised by the Center were not substantial enough to warrant a hearing.

■ Similarly, the Center's argument regarding the failure to transmit the record is unpersuasive. Moreover, it is clear that this is the first time the Center raised an

objection to the Regional Director's failure to transmit the investigatory record to the Board. Under Section 10(e) of the Act, such objections should be raised in the first instance before the Board. *See Woelke, Romero Framing, Inc. v. NLRB,* 456 U.S. 645, 102 S.Ct. 2071, 72 L.Ed.2d 398 (1982). In *Woelke,* the Supreme Court affirmed that "no objection that has not been urged before the Board shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." *Id.* The *Woelke* opinion even suggests that such an objection may be raised in a petition for reconsideration or rehearing. In view of the fact that this objection was not raised before the Board, we are foreclosed from considering it on appeal.

Accordingly, the Medical Center at Bowling Green's petition to set aside the Board's order is denied. The cross-petition for enforcement of the Board's order is granted.