**WILLIAMSON PIGGLY WIGGLY, Petitioner, Cross-Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent, Cross-Petitioner.**

Nos. 86–5800; 86–5890.

United States Court of Appeals, Sixth Circuit.

Argued June 16, 1987.

Decided Sept. 1, 1987.

Rehearing and Rehearing En Banc Denied Oct. 16, 1987.

Mark M. Lawson (argued), White, Elliott and Bundy, Bristol, Va., for petitioner, cross-appellant.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., David Fleischer (argued), Helen Morgan, Emil C. Farkas, Regional Director, Region 9, Cincinnati, Ohio, for respondent, cross-petitioner.

Before MERRITT, MARTIN and WELLFORD, Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge.

This case arises from a finding by the National Labor Relations Board, 280 N.L. R.B. 125 (1986), that the Piggly Wiggly in Pikeville, Kentucky, violated sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (3), when it coercively threatened and interrogated its employees during a union organizing campaign and when it discharged two employees because of their involvement in the attempt to organize. On appeal, Piggly Wiggly challenges the Board's determination that the company illegally discharged Johnny Lucas. The company argues that Lucas was employed as a supervisor at Piggly Wiggly and, consequently, was exempt from the protections of the Act. We disagree.

In June 1984, Lucas, who was the produce manager of the Piggly Wiggly, was informed of a new work schedule to be imposed on the produce department. Lucas was unhappy with the new schedule and, after trying unsuccessfully to discuss the problem with his district supervisor, decided that he and his fellow employees needed a union to represent them. The following day, a Saturday, he called the store's owner, Jack Smith, and arranged to meet with him on Monday. Over the weekend Lucas met with the local president of the United Steelworkers of America and obtained authorization cards which several employees signed. On Monday Lucas and fifteen other employees met with Smith and the company personnel director. Among the complaints raised was the allegation that the store manager, Jim Trout, was stealing from the store. Smith promised to conduct an investigation. Although no mention was made of unionization, the NLRB found that the concerted complaining to management constituted concerted activity protected under the Act.

When Lucas returned to work the following Monday from his previously scheduled one week's vacation, he was interviewed by the personnel director, the head of security, and a lie detector operator about Trout's alleged thievery. During the interview the focus of the inquiry shifted to the meeting of the previous week. Lucas was asked why he had brought fifteen people with him to headquarters, whether unionization was being discussed, whether authorization cards had been distributed, and the names

of persons who had signed cards. The head of security told Lucas he should be fired for failing to tell management that a group of employees was going to headquarters to complain, and for failing to stop them. Lucas was told that he would have better opportunities with future employers if he resigned rather than being fired. A letter of resignation was placed in front of him which he signed. The NLRB found that Lucas's discharge was directly related to his involvement in the union organizing campaign and ordered that he be reinstated and given compensation for lost wages.

In challenging the ruling of the Board, Piggly Wiggly argues that Lucas was at all relevant times employed as a supervisor at the store. Supervisors are excluded from the statutory definition of "employee" under the Act and, consequently, lack protection from discharge for engaging in union and other protected concerted activity. 29 U.S.C. § 152(3). Under the Act, a "supervisor" is

> any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

*Id.* at § 152(11).

The NLRB, after considering the record as a whole, concluded that Lucas was not a supervisor. The Board found that Lucas lacked authority to hire, fire, and discipline employees. In the one instance where Lucas did fire an employee, Lucas was at that time serving as acting night manager and therefore had authority beyond that given to the produce manager. The Board noted that Lucas was an hourly employee, as were the other three full-time employees and one part-time employee of the produce department. Although he received a higher hourly wage than the others, the Board found this discrepancy to be the result of greater seniority rather than because of supervisory responsibilities. Seniority may

also explain why some of the other employees regarded Lucas as a supervisor; the Board, however, found the work of the produce department to be routine, so that employees required little, if any, direction in completing their tasks. The company urges that Lucas be considered a supervisory employee because he attended meetings of department heads. This argument is inconclusive, however, because the record shows that other employees who were admittedly not supervisors also attended department head meetings.

It is well settled that the NLRB, because of its special expertise, is afforded broad discretion in determining whether an employee is a "supervisor." *E.g., Medical Center at Bowling Green v. NLRB*, 712 F.2d 1091 (6th Cir.1983); *Iowa Elec. Light and Power Co. v. NLRB*, 717 F.2d 433 (8th Cir.1983); *Methodist Home v. NLRB*, 596 F.2d 1173 (4th Cir.1979); *NLRB v. Adam & Eve Cosmetics, Inc.*, 567 F.2d 723 (7th Cir. 1977); *Global Marine Development of California, Inc. v. NLRB*, 528 F.2d 92 (9th Cir.1975); *NLRB v. Swift & Co.*, 292 F.2d 561 (1st Cir.1961). Moreover, we agree that "[i]t is important for the Board not to construe supervisory status too broadly, for a worker who is deemed to be a supervisor loses his organizational rights." *McDonnell Douglas Corp. v. NLRB*, 655 F.2d 932, 936 (9th Cir.1981). In reviewing the Board's discretionary determination, we will affirm provided there has been no abuse of discretion, *Medical Center*, 712 F.2d at 1093, and provided the Board's findings of fact are supported by substantial evidence in the record when considered as a whole, *Beverly Enterprises v. NLRB*, 661 F.2d 1095, 1099 (6th Cir.1981). We give substantial deference to the decision of the administrative law judge who has the opportunity to evaluate the credibility of witnesses; we also must consider whatever reduces the weight that the administrative law judge ascribes to such evidence. *NLRB v. Beacon Light Christian Nursing Home*, 825 F.2d 1076, 1079 (6th Cir.1987).

We find the Board's decision that Lucas was a statutory employee at the time he was engaged in protected concerted activity to have support in the record and a

reasonable basis in law. *Beverly Enterprises,* 661 F.2d at 1099. While Lucas apparently had discretion to direct the routine activities of the produce department, such as unloading trucks, stocking and rotating produce, and ordering from suppliers, he had no authority to make independent judgments with regard to hiring, firing, promoting, or setting salaries of employees in his department. Thus, he lacked the economic authority of a "supervisor" as defined by the Act.

Accordingly, the petition for review is denied and the request for enforcement of the June 30, 1986, order of the Board is granted.

WELLFORD, Circuit Judge, dissenting:

The proper standard of review in this case has been recently set out by this court in a decision in which Judge Martin joined:

> The question of whether individuals should be accorded supervisory status is a mixed question of fact and law. *Beverly Enterprises v. NLRB,* 661 F.2d 1095, 1099 (6th Cir.1981). As such, the Board's determination regarding the supervisory status of the line operators is not to be overturned as long as there is *substantial evidence* in the record as a whole to support its finding. *NLRB v. Adam & Eve Cosmetics, Inc.,* 567 F.2d 723, 727 (7th Cir.1977). *Accord, Beverly Enterprises v. NLRB,* 661 F.2d at 1099.

*N.L.R.B. v. Lauren Mfg. Co.,* 712 F.2d 245, 247 (6th Cir.1983) (per curiam) (emphasis added). *See also N.L.R.B. v. Health Care Logistics, Inc.,* 784 F.2d 232, 234 (6th Cir. 1986) (citing *Lauren* ); *N.L.R.B. v. Baja's Place,* 733 F.2d 416, 421 (6th Cir.1984); *Beverly Enterprises, Inc. v. N.L.R.B.,* 661 F.2d 1095, 1099 (6th Cir.1981); *N.L.R.B. v. Wilson-Crissman Cadillac, Inc.,* 659 F.2d 728, 730 (6th Cir.1981); *Machine Tool and Gear, Inc. v. N.L.R.B.,* 652 F.2d 596, 597 (6th Cir.1980); *N.L.R.B. v. Publishers Printing Co.,* 625 F.2d 746, 749 (6th Cir. 1980); *N.L.R.B. v. Detroit Edison Co.,* 537

F.2d 239, 242 (6th Cir.1976); *Pulley v. N.L. R.B.,* 395 F.2d 870, 875 (6th Cir.1968).

The standard of review is *not* abuse of discretion.[1] We do not give the NLRB virtually carte blanche to decide the issue with which this case is concerned: whether an employee occupies supervisory status.

I would conclude that there is not substantial evidence to support the Board's determination that Johnny Lucas was not a supervisory employee of Williamson Piggly Wiggly. The following facts indicate Lucas' supervisory status: (1) Lucas fired Dexter Addington, another employee. (2) Lucas worked at times as night store manager. (3) Lucas rehired Layne, an employee who had quit.[2] Layne's testimony to this effect was neither discredited nor refuted. (4) Lucas recommended other employees for hire, who were later hired. (5) Management consulted Lucas on recommended transfers to and from Lucas' produce department. (6) Lucas prepared work schedules and worklists in his department. (7) A number of employees perceived Lucas as a supervisor. (8) Lucas had a "title" as a department manager. (9) Lucas regularly attended management meetings. (10) Lucas received substantially higher pay and benefits than other department employees. (11) Lucas ordered produce, took inventory, and set prices for produce in his department. (12) Lucas trained employees in his department and evaluated their work performance.

In summary, Lucas had most of the normal indicia of a supervisor. His own testimony was found, at least in part, to be contradictory. His denial of supervisory status was patently self-serving. For these reasons, I would REVERSE the finding of the Board that Lucas was not a supervisory employee within the meaning of the Act.

---

1. The case cited for this proposition, *Medical Center at Bowling Green v. N.L.R.B.,* 712 F.2d 1091, 1093 (6th Cir.1983), has not otherwise subsequently been cited for that proposition.

2. This court has rejected the Board's reasoning that a "single incident" was "too isolated to establish ... status as a supervisor." *N.L.R.B. v. Medina County Publications, Inc.,* 735 F.2d 199, 201 (6th Cir.1984).