917 F.2d 24
 135 L.R.R.M. (BNA) 2872
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
CLARK DISTRIBUTING COMPANY, INC., Respondent.
 No. 90-5086.
 United States Court of Appeals, Sixth Circuit.
 Oct. 24, 1990.
 
 Before BOYCE F. MARTIN, Jr., RYAN and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 The National Labor Relations Board seeks enforcement of its order finding respondent Clark Distributing Company, Inc. in violation of sections 8(a)(5) and (1) of the National Labor Relations Act of 1947, 29 U.S.C. Secs. 158(a)(5) and (1) by refusing to bargain with the Chauffeurs, Teamsters Helpers Local Union No. 236, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, AFL-CIO as the exclusive bargaining representative of certain employees of Clark. The Board, at 295 N.L.R.B. No. 130 (1990), granted the General Counsel's motion for summary judgment finding that Clark had not raised any representation issues that were properly litigated in an unfair labor practice proceeding. Clark contends that its refusal to bargain is justified because the Board abused its discretion when it failed to resolve the unit status of two Clark employees prior to the representation election.
 
 
 2
 Clark Distributing Company, Inc. is engaged in the wholesale distribution of beer from its Paducah, Kentucky facility. In January 1989, the Union filed a petition to represent Clark's employees at the Paducah facility in a unit of all drivers-salesman, truck drivers warehousemen, helper and pre-salesman drivers. An issue arose as to the inclusion of employees in the job classification of "brewery brand manager" in the bargaining unit. The "brewery brand manager" job classification was adopted by Clark in early 1983 in response to a demand by Miller Brewing Company that Clark designate an employee to serve as the "clearinghouse" for information regarding the promotion and sale of its brands. The Union took the position that the two brewery brand managers, (William T. "Tom" Stewart Jr. and Andrew W. "Drew" Lynch) were supervisors and thus ineligible to be in the bargaining unit whereas Clark believed that this classification should be included in the unit. A hearing was held on the issue and the Regional Director concluded that brewery brand managers Stewart and Lynch were statutory supervisors under section 2(11) of the Act, 29 U.S.C. Sec. 152(11), and were excluded from the bargaining unit. He further directed that an election be conducted on February 24, 1989 in a unit of approximately twelve employees. On February 8, 1989, Clark sought review of the Regional Director's decision to exclude the brewery brand managers from the bargaining unit. On February 24, 1989, the Board issued an order in which it found that the request for review raised a substantial issue with respect to supervisory status of the two brewery brand managers, but concluded that the issue could best be resolved through the challenge ballot procedure and denied the request. The order further directed that Stewart and Lynch be permitted to vote.
 
 
 3
 The election was held on February 24, 1989, as scheduled. The tally of ballots indicated that eight votes were cast for the Union, three votes were cast against the Union, and two votes were challenged, those of Stewart and Lynch. On March 3, 1989, Clark filed a timely objection to the conduct of the election based upon the failure of the Board to determine the supervisory status of the brewery brand managers prior to the election. On March 7, 1989 the Regional Director overruled Clark's election objection and certified the results of the February 24 election. Clark then sought review of this decision by the Board. The Board denied review in an order dated May 31, 1989.
 
 
 4
 On March 23, 1989, the Union filed an unfair labor practice against Clark charging that Clark had violated sections 8(a)(5) and (1) of the Act by its refusal to bargain with the Union. The Regional Director issued a complaint six days later. In its answer, Clark admitted its refusal to bargain but asserted that the Board's failure to resolve the unit status of Stewart and Lynch prejudicially and improperly impaired the conduct of the election and deprived the brewery brand managers important rights secured to them by the Act. Thereafter, the Board granted the General Counsel's motion for summary judgment. A decision and order was issued on July 31, 1989, finding that Clark violated sections 8(a)(5) and (1) of the Act by refusing to bargain with the union. The Board ordered Clark to cease and desist from any unfair labor practices that interfere with, restrain, or coerce employees in the exercise of their statutory rights. The order affirmatively required Clark to bargain with the Union upon request.
 
 
 5
 In arguing against the enforcement of the Board's order, Clark contends that the Board abused its discretion when it failed to decide the issue of the supervisory status of Stewart and Lynch after having found that Clark's request for review of the Regional Director's decision raised a substantial issue. Clark argues that by failing to decide the issue of the brewery brand managers' status prior to the election the Board prohibited them from actively participating in the pre-election campaign. Clark further argues that the procedure utilized by the Board misled the employees as to the scope of the unit involved in the election.
 
 
 6
 The procedure utilized by the Board in allowing the brewery brand managers to vote subject to challenge was approved in Medical Center at Bowling Green v. NLRB, 712 F.2d 1092 (6th Cir.1983). In that case the court commented that:
 
 
 7
 Such a practice enables the Board to conduct immediate election where, as here, it is undecided about the eligibility of a relatively small number of individuals whose votes may not affect the election. The question of eligibility may be resolved after the election through the Board's unit clarifying process.
 
 
 8
 Medical Center, 712 F.2d at 1093. Clark objects to the application of this procedure in this particular representation proceeding.
 
 
 9
 Given the Board's administrative expertise in resolving disputes concerning supervisory status, its decisions will usually not be disturbed absent an abuse of discretion. Williamson Piggly Wiggly v. NLRB, 827 F.2d 1098 (6th Cir.1987). Because the record does not reveal an abuse of discretion, the decision of the Board to allow the brewery brand managers to vote subject to challenge is appropriate. In making the determination to utilize the challenge ballot procedure, the Board had to balance competing considerations. On one hand, the use of the challenge vote procedure left the supervisory status of Stewart and Lynch unresolved. In light of this ambiguity Stewart and Lynch might have felt limited in their pre-election participation. However, even if Stewart and Lynch were deemed to be supervisors, they could still have lawfully expressed their respective opinions concerning the election. See 29 U.S.C. Sec. 158(c); NLRB v. Gissel Packing Company, 395 U.S. 575, 617, 89 S.Ct. 1918, 1941-1942, 23 L.Ed.2d 547 (1969) (employer free to communicate to his employees any of his general views about unionism). This consideration weighs in favor of a pre-election determination of their supervisory status. On the other hand, in order to make a final determination as to the supervisory status of Stewart and Lynch the Board would had to have postponed the entire election. The balancing of these competing considerations is for the Board, not the court, See NLRB v. Northeastern University, 707 F.2d 15 (1st Cir.1983).
 
 
 10
 Clark argues that the utilization of the challenged ballot procedure misled the voters as to the scope of the unit involved in the election. In support of this argument Clark cites to a number of cases where the reviewing court objected to the Board's certification of a unit that was found to be significantly different than the unit the employees initially voted for representation. See NLRB v. Parson School of Design, 793 F.2d 503 (2d Cir.1986); Lorimar Productions, Inc., 771 F.2d 1294 (9th Cir.1985); Hamilton Test Systems, Inc., 743 F.2d 136 (2d Cir.1984). In each of these cases, the reviewing court determined that the unit ultimately certified by the Board was significantly different and less effective as a bargaining organ than the unit in which the employees had voted for representation. There is no indication that these concerns are present in this case. First, the actual number of challenged votes in this case was small. Only the two brewery brand managers' votes were challenged in a unit consisting of eleven other employees. The fact these employees were excluded from the unit did not significantly alter the character and scope of the unit. See Medical Center at Bowling Green v. NLRB, 712 F.2d 1091 (6th Cir.1983) (Court approved the Board's determination to permit 17 registered nurses classified as "unit directors" to case challenged ballots in a unit of 145 registered nurses). Secondly, the employees in this case voted with the knowledge that the supervisory status of the brewery brand managers was unresolved. Therefore, the employees were not misled as to the size and scope of the bargaining unit. In the cases cited by Clark, the Board certified a substantially different unit than the one the employees initially voted for representation.
 
 
 11
 Accordingly, the request for enforcement of the July 31, 1989 Order of the Board is granted.