United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued January 14, 1999 Decided February 2, 1999 

 No. 97-1672

 Beverly Enterprises--Massachusetts, Inc., 

 d/b/a East Village Nursing & Rehabilitation Center, 

 Petitioner

 v.

 National Labor Relations Board, 

 Respondent

 On Petition for Review and Cross-Application 

 for Enforcement of an Order of the 

 National Labor Relations Board

 Howard M. Bloom argued the cause and filed the briefs for 
petitioner.

 Charles Donnelly, Supervisory Attorney, National Labor 
Relations Board, argued the cause for respondent. With him 
on the brief were Linda Sher, Associate General Counsel, 
Aileen A. Armstrong, Deputy Associate General Counsel at 


the time the brief was filed, and Christopher W. Young, 
Attorney. John D. Burgoyne, Acting Deputy Associate Gen-
eral Counsel, entered an appearance.

 Before: Wald, Silberman and Sentelle, Circuit Judges.

 Opinion for the court filed by Circuit Judge Sentelle.

 Sentelle, Circuit Judge: Employer East Village Nursing 
& Rehabilitation Center ("East Village") petitions for review 
of an order of the National Labor Relations Board ("NLRB" 
or "Board") finding that it violated sections 8(a)(1) and (5) of 
the National Labor Relations Act, 29 U.S.C. s 158(a)(1), (5). 
East Village acknowledges that it refused to bargain with the 
union certified as the representative of licensed practical 
nurses ("LPNs") and registered nurses ("RNs") at the Cen-
ter, but argues that certification was improper because the 
LPNs and RNs serve as "charge nurses" and are "supervi-
sors" within the meaning of the National Labor Relations Act. 
East Village contends that the nurses are supervisors based 
on their independent disciplinary authority over the certified 
nursing assistants, yet cannot point to any instance in which 
that purported independent authority was exercised. While 
the exercise of supervisory authority is not always necessary 
to establish that authority is possessed, the repeated failure 
to exercise putative authority in circumstances where such 
exercise would be appropriate can be evidence that the au-
thority is more imagined than real. Concluding that the 
Board was justified in viewing this as such a case, we deny 
the petition for review and grant the Board's cross-petition 
for enforcement of its order.

 I.

 East Village Nursing & Rehabilitation Center has four 
nursing units, each supervised by a Unit Coordinator who 
reports to the Director of Nursing. Each unit is at all times 
staffed with from one to three nurses (one or more of whom 
serve as "charge nurses") and from one to six certified 
nursing assistants ("CNAs"). The job description of a charge 
nurse includes, inter alia, independently disciplining CNAs. 
In numerous training seminars, charge nurses have been 

instructed in how to exercise their independent discipline over 
CNAs, and charge nurses have been criticized on their job 
evaluations for failing to exercise their authority over CNAs.

 In 1995, the Service Employees International Union, Local 
285 ("Union"), petitioned to represent all RNs and LPNs 
employed by East Village. East Village contended that repre-
sentation was impermissible because the nurses were statuto-
ry supervisors under s 2(11) of the National Labor Relations 
Act. The Regional Director issued a decision in 1995 conclud-
ing that the nurses were not supervisors. An election was 
held, in which there were insufficient votes in favor of repre-
sentation, and the Union was not certified.

 In November 1996, the Union again petitioned to represent 
the East Village nurses. East Village again objected that the 
nurses were supervisors under the Act, emphasizing that all 
RNs and LPNs sometimes act as "charge nurses," and as 
such have independent authority to discipline certified nurs-
ing assistants. However, the Regional Director issued a 
Decision and Direction of Election finding that the nurses 
were not "supervisors." The Director acknowledged that the 
nurses had been instructed that they have independent au-
thority to discipline. However, she noted that in none of the 
seven recorded incidents of discipline of CNAs in the record 
had the charge nurse exercised independent authority--in 
practice, charge nurses always reported the incident to their 
shift supervisor, unit coordinator, or the Director of Nursing 
or Administrator. The Regional Director acknowledged East 
Village's contention that it is the existence and not the 
exercise of the power to discipline that is dispositive, but 
concluded that the giving of "paper authority" which is not 
exercised does not make an employee a supervisor. East 
Village argued that the nurses' failure to exercise their disci-
plinary authority was due to fear of retaliation by the CNAs, 
who had allegedly threatened them and vandalized their 
vehicles. However, the Director found the nurses' motives 
for refusing to follow East Village's directives to exercise 
independent discipline "irrelevant," noting that "[t]he fact 
remains that the charge nurses have not performed the 
supervisory duties the Employer has attempted to confer on 


them and the Employer has permitted this situation to go 
on." Accordingly, the Director directed election. East Vil-
lage filed a Request for Review, which the Board denied, 2-1.

 In the ensuing election, there were 22 votes in favor of 
representation and 5 against. The Union was certified. 
However, East Village refused to bargain with the Union, 
leading to the present unfair labor charge alleging violations 
of sections 8(a)(1) and (5) of the National Labor Relations 
Act, 29 U.S.C. s 158(a)(1) and (5). After the unfair labor 
practice charge was filed, East Village requested reconsidera-
tion of the Board's decision not to grant review of the 
underlying issues. The NLRB denied East Village's recon-
sideration request in its final Decision and Order, issued on 
September 30, 1997, which ordered East Village to cease and 
desist from refusing to bargain with the Union. The employ-
er petitions for review, and the Board seeks enforcement of 
its order.

 II.

 Under Section 2(11) of the Act, the definition of "supervi-
sor" includes an individual "having authority, in the interest 
of the employer, to ... discipline other employees, ... or 
effectively to recommend such action, if in connection with the 
foregoing the exercise of such authority is not of a merely 
routine or clerical nature, but requires the use of independent 
judgment." 29 U.S.C. s 152(11). The Board's findings 
regarding supervisory status are entitled to affirmance on 
review if supported by substantial evidence on the record as a 
whole. Passaic Daily News v. NLRB, 736 F.2d 1543, 1550 
(D.C. Cir. 1984). The burden of proving supervisory status 
rests upon the party asserting it. Beverly Enters.-Pennsyl-
vania, Inc. v. NLRB, 129 F.3d 1269 (D.C. Cir. 1997).

 In construing Section 2(11), the Board has often noted that 
it is the possession of supervisory authority and not its 
exercise which is critical. See, e.g., Cherokee Heating and 
Air Conditioning Co., 280 NLRB 399, 404 (1986); Sheet 
Metal Workers Local 85, 273 NLRB 523, 526 (1984); Hook 
Drugs, Inc., 191 NLRB 189, 191 (1971). At the same time, 

" 'theoretical [or] paper power will not suffice' to make an 
individual a supervisor." Food Store Employees Union, Lo-
cal 347 v. NLRB, 422 F.2d 685, 690 (D.C. Cir. 1969) (quoting 
NLRB v. Security Guard Serv., 384 F.2d 143, 149 (5th Cir. 
1967)). Accord NLRB v. Sayers Printing Co., 453 F.2d 810, 
813-15 (8th Cir. 1971); Sunset Nursing Homes, Inc., 224 
NLRB 1271, 1272 (1976) ("[T]he mere use of a title or the 
giving of 'paper authority' which is not exercised does not 
make an employee a supervisor."); Great Lakes Towing Co., 
168 NLRB 695, 700 (1967). Appellant urges that these two 
principles are in such tension that their coexistence is unrea-
sonable and invites arbitrariness. We do not agree.

 Supervisory status determinations carry important conse-
quences for the workers whose status is in question. Section 
2(3) of the National Labor Relations Act, 29 U.S.C. s 152(3), 
excludes from the definition of the term "employee" "any 
individual employed as a supervisor," and, under Section 14(a) 
of the Act, 29 U.S.C. s 164(a), an employer cannot be re-
quired to bargain about the working conditions of supervisors. 
Thus when a worker is found to be a "supervisor" within the 
meaning of the Act, she is excluded from the NLRB's collec-
tive bargaining protections. VIP Health Servs., Inc. v. 
NLRB, No. 97-1608, 1999 WL 7831, *4 (D.C. Cir. Jan. 12, 
1999). In light of this, the Board must guard against constru-
ing supervisory status too broadly to avoid unnecessarily 
stripping workers of their organizational rights. See Wil-
liamson Piggly Wiggly v. NLRB, 827 F.2d 1098, 1100 (6th 
Cir. 1987). Because of the serious consequences of an erro-
neous determination of supervisory status, particular caution 
is warranted before concluding that a worker is a supervisor 
despite the fact that the purported supervisory authority has 
not been exercised. In some cases, such a conclusion is no 
doubt appropriate. For example, in a given situation, the 
failure to exercise supervisory authority may indicate only 
that circumstances have not warranted such exercise. In 
such a case, it may be quite possible to establish that real 
authority is possessed, despite the lack of exercise. In fact, a 
supervisor's lack of occasion to exercise authority may itself 
indicate that that authority is very strong indeed. But absent 


exercise, there must be other affirmative indications of au-
thority. Statements by management purporting to confer 
authority do not alone suffice. See Chevron, U.S.A., Inc., 309 
NLRB 59, 69 (1992) (no weight given "job descriptions that 
attribute supervisory authority where there is no independent 
evidence of its possession or exercise"); Advanced Mining 
Group, 260 NLRB 486, 607 (1982) ("What is relevant is the 
actual authority possessed and not the conclusory assertions 
of a company's officials."). For example, in Oil, Chemical 
and Atomic Workers Int'l Union, AFL-CIO v. NLRB, 445 
F.2d 237 (D.C. Cir. 1971) ("OCAW"), this court upheld the 
Board's conclusion that "senior operators" were not supervi-
sors, despite notices and postings by the employer that the 
senior operators were to supervise the personnel on their 
shift. We noted that "beyond the statements or directives 
themselves, what the statute requires is evidence of actual 
supervisory authority visibly translated into tangible exam-
ples demonstrating the existence of such authority." Id. at 
243.

 Such "tangible examples" evidencing authority are lacking 
here. The record reveals that in multiple training sessions, 
and on their performance evaluations, the nurses were en-
couraged by management to "independently discipline" certi-
fied nursing assistants. Yet the record also reveals seven 
recorded occasions on which the nurses were involved in 
disciplinary incidents involving certified nursing assistants. 
On each of these seven occasions, the nurse involved reported 
the incident to her supervisors rather than independently 
disciplining the CNA. Accordingly, the Board concluded that 
the employer's efforts to communicate to the nurses that they 
possessed independent disciplinary authority did not "demon-
strate supervisory authority in the absence of evidence that 
[the nurses] have any role in discipline beyond a reporting 
function." Cf. Nymed, Inc., 320 NLRB 806, 812 (1996); 
Passavant Health Ctr., 284 NLRB 887, 889 (1987).

 Appellant argues, however, that the Board erred in failing 
to adequately consider why the nurses did not exercise the 
independent authority they purportedly possessed. In partic-
ular, appellant claims that the Board did not give sufficient 


weight to the testimony of several nurses that they had been 
threatened by CNAs, that their vehicles had been vandalized, 
and that they feared retaliation by CNAs if they exercised 
their disciplinary authority. But even if accurate, appellant's 
explanation for the nurses' failure to exercise their authority 
is beside the point. The Board was not charged with deter-
mining whether management desired the nurses to be super-
visors. Nor was it charged with determining whether the 
nurses would have acted as supervisors but for some inter-
vening factor. The Board was required to decide whether the 
nurses were supervisors, and the consistent failure to exercise 
putative disciplinary authority despite the opportunity to do 
so was certainly an appropriate factor for the Board to 
consider in making its decision, whatever the reason for that 
failure.

 Indeed, under the approach appellant advocates, an em-
ployer could effectively disqualify employees from a bargain-
ing unit by granting them paper authority that they will be 
too intimidated to exercise. This possibility would be particu-
larly troublesome where, as here, much of the evidence of 
conferred authority is based on management actions which 
occurred when a union campaign was in progress or on the 
horizon. See OCAW, 445 F.2d at 173 ("In [an atmosphere 
prior to any union campaign], untainted by live controversies 
over the statutory status of any particular group of employ-
ees, management's statements conferring responsibilities and 
allocating duties are likely to be more reliable than similar 
statements made in the context of union conflict when di-
rectives are often addressed as much to the Board as they are 
to the company's personnel.").

 East Village may well have had every intention that the 
charge nurses assume true supervisory roles. Nonetheless, 
whatever their intention, East Village's management failed to 
take adequate measures to ensure that the nurses' authority 
would materialize in practice. Appellant acknowledges that it 
did not "discipline" the nurses for not exercising their super-
visory authority, and did not "discipline" CNAs for retaliatory 
conduct, but argues the lack of formal disciplinary procedures 
in no way indicates that East Village acquiesced in the charge 

nurses' failure to exercise their supervisory roles. Indeed, 
East Village asserts that, far from permitting this situation, it 
strove to correct it through unfavorable reviews on nurses' 
evaluations and continuing encouragement to exercise disci-
plinary authority. Without purporting to suggest what would 
have been an appropriate management strategy, we note only 
that the strategy employed, however well-intentioned, was 
ineffectual. The record does indicate that at training time 
and evaluation time, East Village enthusiastically championed 
the charge nurses' supervisory authority. But each time an 
incident calling for discipline of a CNA occurred, the charge 
nurses failed to act independently, and other supervisory and 
management personnel consistently stepped in and handled 
the discipline. Furthermore, even to the degree that it 
suggests supervisory authority, but see VIP Health Servs., 
1999 WL 7831 at *6, there is no evidence that there are any 
times when no shift or unit supervisors are present. In 
short, East Village has apparently structured its nursing staff 
in such a way that the charge nurses, for whatever reason, do 
not meaningfully possess the purported authority they have 
been given. If the nurses refuse to exercise the authority 
management intended due to fear of the CNAs, it is a 
problem for management to correct. It is not, however, a 
reason for the Board or this court to impute to the nurses an 
authority which they do not in fact possess. In the circum-
stances of this case, the Board was justified in concluding that 
the nurses' authority is not an actuality, albeit undemonstrat-
ed, but is instead a speculative possibility, which absent 
demonstration, is simply "paper power."

 Conclusion

 Because the Board's conclusion that the East Village nurs-
es are not supervisors was supported by substantial evidence 
on the record as a whole, East Village's refusal to bargain 
was unjustified. Accordingly, we deny appellant's petition for 
review, and grant the Board's cross-petition for enforcement 
of its order.