**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BEACON LIGHT CHRISTIAN NURSING HOME,**
**Respondent.**

**No. 86–5294.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 4, 1986.

Decided Aug. 7, 1987.

---

Elliott Moore, Deputy Associate Gen. Counsel, Washington, D.C., Helen Morgan, Richard Cohen (argued), Bernard Gottfried, Director, Region 7, NLRB, Detroit, Mich., for petitioner.

Scott E. Dwyer (argued), Grand Rapids, Mich., for respondent.

Before LIVELY, Chief Judge, MARTIN and BOGGS, Circuit Judges.

BOGGS, Circuit Judge.

This case arises from a petition for enforcement of a National Labor Relations Board ("Board") order against an employer for refusal to bargain based on a disputed union certification election. The employer argues that the bargaining unit was wrongly determined because twenty licensed practical nurses (LPN's) were included in the unit, in spite of the employer's contention that they exercised such independent professional judgment in the interest of the employer that they should be considered supervisors and thus excluded from the unit. We find that the Board's order is not supported by substantial evidence, and we deny enforcement.

## I

Beacon Light Christian Nursing Home ("employer") is a nursing home located in Marne, Michigan. The home contains five wings providing nursing care to the aged residents. The home has a capacity of 239 beds. The employer has about 200 employees, including 27 dietary employees, 19 housekeeping and maintenance employees, a social worker, and 124 nursing employees including nurse's aides, LPN's, and registered nurses (RN's). All of these employees, except for the dietary personnel, are responsible to the Director of Personnel. The nursing employees include 100 nurse's aides, 20 LPN's, and 4 RN's. They are under the authority of Sue Davis, the Director of Nursing. The Chief Administrator at the home, Kenneth Jordan, is responsible for all aspects of operations.

The employer operates three nursing shifts, seven days a week. The number of LPN's and RN's varies on each shift. On most days, an RN is not scheduled to be on duty in a wing. There is at most one LPN or RN working a wing per shift. The uncontradicted testimony at the bargaining unit certification hearing, including the statements of a few LPN's, showed that the LPN's and RN's have virtually the same duties to direct patient care and supervise and instruct aides.

The LPN's and RN's are responsible for evaluating the nurse's aides at the three-month probation period and annually. The evaluations are discussed with the nurse's aides and become a part of their personnel files. The evaluations are considered in promotion and demotion decisions. The LPN's and RN's are responsible for report-

ing violations of patient care duties and personnel rule infractions by nurse's aides on forms called "Counseling Forms." These disciplinary reports become a part of the nursing aides' personnel files and normally result in formal disciplinary action after three or four reports are lodged for the same violation of the rules. It was undisputed at the hearing that the Director of Nursing and the Chief Administrator have the actual authority to promote, hire, discharge, demote and indefinitely suspend a nurse's aide.

The LPN's and RN's assign patients to nurse's aides, cover unexplained absences for nurse's aides, and have the power also to suspend them temporarily for misconduct. The concepts of LPN "supervision" and "direct supervision" are explained in the job description for LPN's, and the concept of LPN "team leadership" is explained in the employee's handbook, both introduced at the hearing.

The testimony of the Chief Administrator established that on the day shift there are normally 35 nursing care personnel and therefore a ratio of 5.7 patients per 1 nursing care personnel. On the afternoon shift there are normally 30 nursing care personnel and 6.6 patients per nursing care person. On the evening shift there are normally 15 nursing care personnel and 13.3 patients per nursing care person. Thus, the ratio of patients to nursing care personnel is considerably more favorable than the statutory requirement in Mich.Stat.Ann. 14.15(21720a)(2) [333.21720a(2)] (Callaghan 1980), which requires an 8:1 ratio on the first shift, a 12:1 ratio on the second shift, and a 15:1 ratio on the evening shift. Mich. Stat.Ann. 14.15(21720a)(1), 333.21720a(1) (Callaghan 1980) also requires the presence of one licensed nurse on duty at all times. The testimony at the hearing showed that on most shifts, there are no RN's present.

The United Furniture Workers of America ("union") petitioned the Board on July 24, 1984 for certification of its representation of the workers at the home. The union requested the inclusion of all service and maintenance employees including dietary, housekeeping, laundry, social service, activity, and scheduling employees, and the LPN's and the nurse's aides. When the employer contested the union's definition of the bargaining unit, the administrative law judge held a hearing and determined that the unit included the LPN's. The union won the election by a vote of 68 to 65. Subsequently, after review was denied, the Regional Director issued a complaint against the employer for a refusal to bargain in violation of Sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act ("NLRA"). The Board entered an order against the employer without hearing because of the prior certification unit decision.

## II

The NLRA is very clear that supervisors are not employees and vice versa. "The term 'employee' shall include any employee ... but shall not include ... any individual employed as a supervisor...." 29 U.S.C. § 152(3) (1982 & Supp. III 1985). This has been the law since the Taft-Hartley Act in 1947, when that act instituted the supervisors exemption to improve the peacefulness of labor relations between employers and employees in the national economy. Labor Management Relations (Taft-Hartley) Act § 1(b), 29 U.S.C. § 141(b) (1982 & Supp. III 1985). The change was considered necessary to allow employers to have the undivided loyalties of these important employees. *Florida Power & Light Co. v. International Brotherhood of Electrical Workers, Local 641*, 417 U.S. 790, 806, 94 S.Ct. 2737, 2746, 41 L.Ed.2d 477 (1974). The determination of whether an employee is a supervisor depends on the functions that the employee performs for the organization, including the functions mentioned in the statute of assignment, reward, suspension, lay off, recall, transfer, determination of wages, discipline, hiring and discharge, responsible direction, and recommending such action. 29 U.S.C. § 152(11) (1982 & Supp. III 1985).

The only issue in this case is whether there is substantial evidence that the LPN's do not serve in a supervisory capacity. The Board says yes and the employer

says no. Our task is to review the evidence and the law to decide the issue, taking substantial evidence to mean "that quantum of evidence that a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951). Although we review the whole record of the hearing in the bargaining unit certification proceedings, the court is not writing on a clean slate. In reviewing for substantial evidence, substantial deference is due the decision of the administrative law judge who heard the witnesses and had the opportunity to evaluate their credibility. *Beverly Enterprises v. NLRB*, 661 F.2d 1095, 1100 (6th Cir. 1981), *appeal after remand*, 727 F.2d 591 (6th Cir.1984). Still, the court must take into account whatever detracts from the weight that the administrative law judge gave to the evidence. *Universal Camera*, 340 U.S. at 488, 71 S.Ct. at 465.

The administrative law judge found that the LPN's are not supervisors based in part on the absence of meaningful powers of discipline and evaluation of the nurse's aides. Much testimony was heard concerning their role in filling out Counseling Forms and Evaluation Forms. Against this testimony, the administrative law judge considered the fact that the LPN's do not have the power to discharge or promote the nurse's aides.

█ While it is true that the LPN's do not have power to discharge or promote, the administrative law judge should not have looked at these characteristics in isolation. The statute provides that it is the relationship of the evaluation and disciplinary role to the whole organization that is important. In this case, there is clear evidence that the LPN's were responsible for evaluation and discipline. The Counseling Forms became a part of the employee's personnel record. The LPN's were expected and encouraged to use them routinely. Three or four such citations could result in formal disciplinary action including · discharge, suspension or demotion. The eval-

uation reports were serious attempts to determine the employees' progress, and constitute "recommending action" within the meaning of the NLRA. 29 U.S.C. § 152(11) (1982 & Supp. III 1985); *ITT Lighting Fixtures v. NLRB*, 712 F.2d 40, 45 (2d Cir.1983), *cert. denied*, 466 U.S. 978, 104 S.Ct. 2361, 80 L.Ed.2d 833 (1984); *American Diversified Foods, Inc. v. NLRB*, 640 F.2d 893, 897 (7th Cir.1981). We reject the Board's focus only on the end results of the LPN's efforts, because it obscured the meaningfulness of the LPN's disciplinary and evaluative functions.

The continued operation of the home depended on the performance of important supervisory duties that were the responsibility of the LPN's. The LPN's instructed the nurse's aides and were their team leaders. The LPN's assigned patients to the nurse's aides and were responsible for their work. Supervisors are not only people who may assign work, discharge, suspend, promote, or recommend such action according to the express language of the NLRA, they are also people who, according to the statute, "responsibly direct" the work of others, as do these LPN's. *Maine Yankee Atomic v. NLRB*, 624 F.2d 347, 361 (1st Cir.1980); *Ohio Power Co. v. NLRB*, 176 F.2d 385, 387 (6th Cir.), *cert. denied*, 338 U.S. 899, 70 S.Ct. 249, 94 L.Ed. 553 (1949); *Westinghouse*, 215 NLRB 123 (1974).

Contrary to the assertions of the Board, nurses with this kind of responsibility are not disqualified from being supervisors simply because their duties largely involve "mere patient care". Patient care (or "mere patient care," in the Board's phraseology) is the business of a nursing home. Where nurses otherwise meet the statutory definition of supervisors, they are not disqualified because the activity they are supervising is patient care. There is no support in either the text of the Taft-Hartley Act or the legislative history of that Act for such a position.[1] Upon our reading of the statute, we think that the law means exactly what it says, that individuals who "promote, discharge, discipline, assign, and

1. The legislative history to the Health Care Amendments of 1974, Pub.L. No. 93–360, 93rd   Cong., 2d Session supports our conclusion as well. *See* text at footnote 2, *infra*.

responsibly direct employees, or recommend such action" are supervisors, whether they are employed in the health care industry or any other industry. 29 U.S.C. § 152(11) (1982 & Supp. III 1985). We consider it relevant to our conclusion that with respect to hospitals at least, if Congress had desired to remove health care supervisors from the pre-existing class of supervisors in the Health Care Amendments of 1974, Pub.L. No. 93–360, 93rd Cong., 2d Sess., 1974 U.S.Code Cong. & Admin.News, 3946, it certainly knew how to express such a change in the text of the Amendments.[2]

■ On our reading of the statute, the underlying testimony to the Board does not provide substantial evidence to support its conclusions. The employer's ratio of nursing care personnel to patients met and exceeded state standards; its concentration of nursing care personnel demanded a good supervisor-to-employee ratio that could be provided only if the LPN's are considered supervisors. If the LPN's were not supervisors, then 15 to 30 nursing personnel frequently were providing patient care with no on-site supervision. This is not a reasonable conclusion for a well-run nursing home, and there is no substantial evidence to support it.

In addition, based on the state law requiring a licensed nurse on duty at all times, it is not reasonable to assume that the nurse's aides had the information and technical knowledge to supervise their own performance. Common sense dictates that so long as the state statute and these ratios remain in force, the LPN's will be performing important supervisory duties. *Northwoods Manor, Inc.*, 260 NLRB 854, 855 (1982); *see Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957) (semble); *accord, NLRB v. Natural Gas Utility District of Hawkins County, Tennessee*, 402 U.S. 600, 605, 91 S.Ct. 1746, 1750, 29 L.Ed.2d 206 (1971).

The Board always has the burden of coming forward with evidence showing that the employees are not supervisors in bargaining unit determinations. S.Rep. No. 105, 80th Cong., 1st Sess. 19, reprinted in Committee on Labor and Public Welfare, Legislative History of the Labor Management Relations Act, 1947, 425 (Comm. Print 1974); *Newspaper Handlers & Drivers Local No. 372, a/w Intern. Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America v. N.L.R.B.* 735 F.2d 969, 971 (6th Cir.1984), *cert. denied,* 470 U.S. 1051, 105 S.Ct. 1750, 84 L.Ed.2d 815 (1985); *see N.L.R.B. v. Transportation Management Co.,* 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983). In light of the totality of the LPN's organizational duties and the failure of the Board to show that the LPN's did not "responsibly direct" the nurses' aides and "recommend ... action," there was no such evidence.

Because the union was elected by only three votes and there were twenty LPN's in the voting unit, as a matter of law their improper inclusion in the bargaining unit must have influenced the outcome of the election. *Beverly Enterprises, Inc. v. NLRB,* 661 F.2d 1095, 1104 (6th Cir.1981). Accordingly, we conclude that both the bargaining order and the unfair labor practice order must be denied enforcement and the case returned to the Board for further proceedings consistent with this opinion.

---

**2.** S.Rep. 93–766, 93rd Cong., 2d Sess., reprinted in 1974 *United States Congressional and Administrative News,* 3946, 3951; F. Agusti, *Effect of Prior Judicial and Administrative Constructions on Codification of Pre-Existing Federal Statutes:* *The Case of the Federal Securities Code,* 15 Harv. J. Legis. 367 (1978); *see also Beth Israel Hospital v. NLRB,* 437 U.S. 483, 497, 98 S.Ct. 2463, 2471, 57 L.Ed.2d 370 (1978).