**HEALTH CARE & RETIREMENT CORPORATION OF AMERICA, Petitioner/Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent/Cross–Petitioner.**

Nos. 92–5291, 92–5469.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 4, 1992.

Decided March 10, 1993.

Cary Rodman Cooper, Margaret J. Lockhart (argued and briefed), Cooper, Straub, Walinski & Cramer, Toledo, OH, for Health Care & Retirement Corp. of America.

Aileen A. Armstrong, Deputy Associate Gen. Counsel, Howard E. Perlstein, David A. Fleischer (argued and briefed), N.L.R.B., Office of the Gen. Counsel, Washington, DC, James L. Ferree, Engrid E. Vaughan, N.L.R.B., Region 9, Cincinnati, OH, for N.L.R.B.

Before: JONES and SILER, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

Petitioner and Cross–Respondent, Health Care & Retirement Corporation of America, hereinafter referred to as either "petitioner" or "HCR", timely filed a petition to review the Order of the National Labor Relations Board, ("the Board"), dated March 3, 1992. Respondent and Cross–Petitioner, the National Labor Relations Board, hereinafter referred to as either "General Counsel" or "respondent", filed a cross-petition for enforcement of the Board's Order.

## I.

Petitioner operates a nursing home facility in Urbana, Ohio. In April, 1989, one of

the facility's employees, Ruby Wells, filed a charge with the NLRB claiming three HCR employees, including herself, had been discharged for participating in activities protected by the National Labor Relations Act. The charge also alleged that she and two other employees received warnings from the nursing home for their participation in protected activities. On May 25, 1989, the Board issued a complaint alleging respondent had committed an unfair labor practice as defined by the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* ("the Act"). Specifically, the complaint accused HCR of disciplining certain employees who were licensed practical nurses (LPNs) and that the employees were being disciplined for engaging in concerted protected conduct for the purpose of collective bargaining and other mutual aid and protection in violation of Section 8(a)(1) of the Act.

A hearing was held before an Administrative Law Judge ("ALJ") during which both sides presented evidence. HCR contended that the nurses were not protected by the Act because they were supervisors. The General Counsel conceded that if the nurses were found to be supervisors, then they were not to be given protected status. Moreover, HCR maintained that it acted against the nurses for entirely appropriate, lawful, reasons.

The ALJ initially found the nurses to be "employees" within the meaning of the Act and, therefore, cloaked with the protections provided for by the Act. Nevertheless, the ALJ held that HCR had not committed an unfair labor practice by discharging employees for engaging in allegedly protected activities. Rather, the ALJ found the discharges were based on justifiable considerations. Furthermore, the ALJ determined that HCR had not, except in one instance, improperly issued written warnings.

The General Counsel filed exceptions to the decision of the ALJ disputing the lack of a finding of unfair labor practices. HCR filed cross-exceptions challenging the ALJ's determination that the nurses were employees and not supervisors within the meaning of § 2(11) of the Act. On January 21, 1992, the Board issued its Decision and Order. Regrettably, the Board's Order barely addressed HCR's cross-exceptions, upholding the ALJ's determination the nurses were employees and not supervisors, merely referring to it in a footnote. The Board, upon review, however, concluded that the ALJ had incorrectly determined that HCR did not commit an unfair labor practice. Instead the board found that HCR had, in fact, discriminated against the employees for engaging in concerted protected activity in violation of § 8(a)(1) of the Act. The Board ordered HCR to cease and desist from engaging in unfair labor practices and to reinstate the nurses with back pay.

We now have before us HCR's petition to review the Board's decision. The Board has also filed a cross-petition to enforce the Board's Order.

## II.

HCR's nursing home in Urbana, Ohio, known as Heartland of Urbana, contains 100 beds and provides skilled long-term care for its residents. Heartland employs approximately 100 people. The Nursing Department is staffed by a Director of Nursing ("DON") and an Assistant Director of Nursing ("ADON"), thirteen to fifteen registered nurses and LPNs (known as staff nurses), and fifty to fifty-five aides. The nursing home is physically divided into two fifty-unit wings. During the day, each wing is staffed with one nurse and six aides. During the evening shift, there are one nurse and four aides per wing, and at night there is one nurse per wing and four or five aides on duty for the entire facility. The aides report directly to the staff nurse on duty. There is also a treatment nurse and a patient assessment nurse, whose duties, along with the DON and the ADON, are performed during normal business hours.

During late 1988, and continuing into 1989, the atmosphere at Heartland deteriorated. There was animosity among the employees and morale was low. This manifested itself in a series of disputes between management and employees. Three of the LPNs requested a meeting with Brenda

Stabile, the nursing home Administrator, to discuss their plight. Ms. Stabile refused to meet with them at that time, asserting that she was too busy. She did, however, instruct them to make an appointment for later in the week. Rejecting this approach, the nurses drove to Toledo, Ohio with a mission of meeting with Jim Millspaugh, HCR's Director of Human Resources, and Bob Possanza, HCR's Vice-President of Operations. The two men met with the nurses and during the discourse, Millspaugh agreed to investigate their complaints.

Millspaugh did indeed conduct an investigation, the results of which led to the hiring of more aides, increasing the wages aides were paid, the disciplining of four nurses and ultimately terminating three nurses.[1] HCR maintains the nurses who were disciplined, were disciplined because of their uncooperative attitude and not because of their participation in allegedly protected activities.

### III.

Petitioner contends on appeal that both the ALJ and the Board erred by not finding the staff nurses to be supervisors, as defined by the Act, hence outside the scope of the Act's protection. On appeal, both parties acknowledge, as they did in the proceedings below, that should the staff nurses' positions be determined to be "supervisory" within the meaning of the Act, then the nurses are not protected by the provisions of the Act.

The ALJ properly recognized that the issue of whether the nurses were supervisors or employees must first be resolved before the merits of the unfair labor practice charges could be addressed. He addressed the matter extensively, concluding as follows:

> It is clear that in common parlance Heartland's nurses are "supervisors." They give orders (of certain kinds) to the aides, and they follow those orders. In a manner of speaking, certainly, the nurse

on duty is in charge of a wing of the facility.

> But Section 2(11)'s definition of supervisor is different from Webster's. And as I understand the meaning of that provision, Heartland's nurses were not supervisors during the period under consideration.

Decision of the ALJ, p. 10.

The Board, in reviewing the ALJ's decision, barely addressed this controversy. In a footnote, the Board stated its agreement with the ALJ's finding that the staff nurses were employees within the meaning of the Act. The Board further stated that the burden to prove supervisory status rested with HCR, though it acknowledged that this court has stated that it is the Board and not the employer who must prove employee status. *NLRB v. Beacon Light Christian Nursing Home*, 825 F.2d 1076 (6th Cir.1987). Yet, in spite of this acknowledgement, the Board opined that it, "has not acquiesced on this point." Finally, the Board summarily stated that, in any event, the preponderance of the evidence established the nurses were employees as defined by the Act.

In the case at bar, this court's analysis must be guided by the need for a distinction between supervisor and employee. The exclusion of supervisors from coverage under the Act was considered essential to allow employers to have the undistracted allegiance of employees in key positions. *See Florida Power & Light Co. v. International Brotherhood of Electrical Workers, Local 641*, 417 U.S. 790, 806, 94 S.Ct. 2737, 2745, 41 L.Ed.2d 477 (1974). By not providing coverage to supervisors, Congress maintained a reasonable balance of power between employers and unions which could potentially arise if supervisors were themselves union members. *Children's Habilitation Center, Inc. v. N.L.R.B.*, 887 F.2d 130, 131 (7th Cir.1989).

A panel of this court has recently addressed the issue of whether nurses were

---

1. One of the nurses who was disciplined had not gone on the trip to Toledo. Her employment was not, however, terminated. Only one of the nurses who traveled to Toledo was not disciplined in any way.

supervisors or employees for collective bargaining purposes, holding as follows:

■ In language that has been unchanged since it was added to the Taft–Hartley Act in 1947, § 2(11) of the National Labor Relations Act, 29 U.S.C. § 152(11), defines the term "supervisor" thus:

"any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

It bears emphasis, perhaps, that "any" individual who meets the statutory tests is a supervisor; there is no exception for supervisors in the health care field. In 1974 the Senate Labor Committee considered recommending enactment of legislation to create such an exception, but the idea was dropped. See S.Rep. No. 93–766, 93rd Cong., 2d Sess. 6 (1974), reprinted in (1974) U.S.Code Cong. & Admin.News 3946, 3951.

It also bears emphasis that § 2(11) uses the disjunctive "or" in listing the numerous indicia of supervisory status. *NLRB v. Medina County Publication, Inc.*, 735 F.2d 199, 200 (6th Cir.1984). Any individual who has authority in any *one* of the listed categories is a supervisor, according to the statute, as long as such authority is to be exercised "in the interest of the employer" and as long as its exercise "is not merely of a routine or clerical nature, but requires the use of independent judgment."

*Beverly California Corp. v. NLRB*, 970 F.2d 1548 (6th Cir.1992).

It must be noted that there is a history of conflict between the Board and the courts concerning the supervisory status of nurses employed at nursing homes. *Children's Habilitation Center, Inc.*, 887 F.2d at 134. The Board has always taken the position that a nurse is not a supervisor when her conduct is in the furtherance of the patient's interest. The Board maintains that nurses are working for the patient's interests, not the interests of their employers. Therefore, the Board maintains that nurses should not be considered to be supervisors under the Act. This position, however, was rejected by this court in *N.L.R.B v. Beacon Light Christian Nursing Home*, 825 F.2d 1076 (6th Cir.1987). In *Beacon Light*, this court held that if a nurse's actual functions performed met the statutory criteria for being a supervisor, then the nurse would not be disqualified because he/she was engaged in "mere patient care." The court in *Beacon Light* further held that the burden of proving employee status for bargaining unit determinations rested with the Board. *Id.* at 1080.

The Board, nevertheless, once more took this position before the Sixth Circuit in *Beverly*. Again, this court rejected a distinction based on whether a nurse's actions were taken in the interest of a patient. The Board, as cross petitioner, is now once again before this court asking not only to uphold its own order, but to overrule *Beacon Light* and its progeny of cases. As we have already noted, the Board is aware of the law in the Sixth Circuit, but has steadfastly failed to apply it in a fashion appropriate with case authority. It is unfortunate that this court must repeatedly remind the Board that it is the courts, and not the Board, who bear the final responsibility for interpreting the law. *Beverly California Corp.*, 970 F.2d at 1555.

■ Turning to the case *sub judice*, this court must first determine whether the nurses are indeed supervisors. The *Beacon Light* court established the standard of review to be applied in determining supervisory status as "whether there is substantial evidence that the LPNs do not serve in a supervisory capacity." *Beacon Light Christian Nursing Home*, 825 F.2d at 1078. As will be explained below, respondent has failed to establish, by substantial evidence, that the LPNs are not supervisors. Moreover, there is substantial evidence to support HCR's claim that the LPNs are, in fact, supervisors.

  It appears that the staff nurses are indeed supervisors within the definition of § 2(11). Among a staff nurse's functions are the authority to assign the nurses aides and to responsibly direct them. The Director of Nursing assigns each aide to a certain shift. Once assigned to a shift, the staff nurse in charge is responsible for assigning each aide to a particular patient. Each aide assignment is based primarily upon the needs of the patients [2], but also with an attempt to rotate the aides' assignments. When aides do not report to work or leave work early, it is the staff nurse's responsibility to attempt to find a replacement. A staff nurse has the authority to offer other aides the option of working overtime to fill such vacancies. Although it is the staff nurse's responsibility to find a replacement, the staff nurse has the discretion to determine how he/she will accomplish his/her duties. A staff nurse may also assign and/or approve breaks and lunches.

It is clear that the duties of a staff nurse at Heartland nursing home clearly require both assigning aides to specific tasks and directing the operation of the aides, as well as the entire nursing home, when the Director of Nursing or his/her assistant is not present. As this court made clear in *Beverly*, § 2(11) provides that an employee is considered a supervisor if **any one** of the enumerated job tasks are undertaken, provided the authority is exercised in the interest of the employer and requires the use of independent judgment. *Beverly Calif. Corp.*, 970 F.2d at 1548. The job duties of the LPNs at Heartland require the use of independent judgment and are taken in the interests of the employer. Accordingly, in the case *sub judice*, the LPNs must be considered supervisors within the meaning of the Act and, thus, outside the coverage of the National Labor Relations Act. Moreover, respondent failed to meet its burden of providing substantial evidence of non-supervisory status. Neither the ALJ's decision nor the Board's Order recognized that the burden rested not on HCR, but on respondent. A burden which was not met.

As this court stated in *Beverly*, it is up to Congress to carve out an exception for the health care field, including nurses, should Congress not wish for such nurses to be considered supervisors. It is the responsibility of this Court to interpret the law as written by Congress and promulgated through case decisions. Although the Board has maintained it will not yield this point, when the facts so warrant, as in the case at bar, this court must reverse the decision of the Board. Since the staff nurses are supervisors and not covered under the Act, this court need not review the merits of the unfair labor practice claims.

### IV.

The petition for review is GRANTED, the Board's Order of January 21, 1992 is VACATED, and the cross-application for enforcement is DENIED.

2. Certain patients may require more aides based on the patients' physical and mental infirmities.