**Nos. 03-2626, 04-1141**

File Name: 06a0326n.06

Filed: May 9, 2006

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| EXTENDICARE HEALTH SERVICES, INC., d/b/a GALTIER HEALTH CENTER, | ) ) ) |
| Petitioner/Cross-Respondent, | ) ) |
| v. | ) ) PETITION FOR REVIEW AND |
| NATIONAL LABOR RELATIONS BOARD, | ) CROSS-APPLICATION FOR ) ENFORCEMENT OF AN ORDER |
| Respondent/Cross-Petitioner, | ) OF THE NATIONAL LABOR ) RELATIONS BOARD |
| MINNESOTA'S HEALTH CARE UNION, SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 113, | ) ) ) ) |
| Intervenor. | ) ) |

Before:     **NELSON** and **BATCHELDER**, Circuit Judges, and **O'MALLEY**, District
            Judge.[*]

    **DAVID A. NELSON**, Circuit Judge.  These cases are here on a petition for review

and a cross-application for enforcement of an order of the National Labor Relations Board.

The question before us is whether substantial evidence supports the Board's determination

that floor nurses employed at the petitioner's nursing home are not "supervisors" within the

meaning of the National Labor Relations Act.

_____

[*]The Honorable Kathleen M. O'Malley, United States District Judge for the Northern
District of Ohio, sitting by designation.

In our view, the record establishes that the nurses in question use independent judgment in directing the work of nursing assistants. The record also establishes that the nurses independently and effectively initiate disciplinary proceedings against nursing assistants. For these reasons, we are persuaded that the nurses are statutory supervisors and that the Board's contrary determination is not supported by substantial evidence. We shall grant the petition for review, vacate the Board's order, and deny the application for enforcement.

I

Extendicare Health Services, Inc., operates Galtier Health Center, a 125-bed long-term care nursing facility in St. Paul, Minnesota. The nursing department at the Galtier facility is headed by a director of nursing. Four nurse managers, one for each floor of the facility, report to the director. Reporting to the nurse managers are five registered nurses ("RNs") and 25 licensed practical nurses ("LPNs"), referred to collectively as "floor nurses," "staff nurses," or "charge nurses." About 65 nursing assistants report to the floor nurses.

The floor nurses and nursing assistants are assigned to one of three shifts. The first shift is staffed by eight nurses and 13 assistants, the second shift by seven nurses and 13 assistants, and the third shift by three nurses and four assistants.[1] When the director of

---

[1]A medical assistant — *i.e.*, an assistant trained to distribute medications — is a part of the nursing staff on the second and third shifts.

nursing and the nurse managers are not in the building — *i.e.*, at all times other than from 8:00 a.m. to 5:00 p.m. on weekdays — one of the floor nurses acts as the "house supervisor." During these periods a nurse manager or an off-duty floor nurse is on call to assist the house supervisor if necessary.

According to written job descriptions, the floor nurses "assume[] responsibility and accountability for a group of residents/patients for a shift of duty." They "adhere to the standards of care for the area, manage[] the environment to maintain resident/patient safety, and supervise[] the resident/patient care activity performance by nursing assistants . . . ." The nursing assistants' activities include bathing and grooming residents, feeding them, and helping them into and out of beds and wheelchairs.

Minnesota's Health Care Union, Service Employees International Union Local 113, petitioned the Board in May of 2003 for certification as the representative of a bargaining unit consisting of all RNs and LPNs employed at the Galtier facility.[2] Extendicare responded that its floor nurses are excluded from the protections of the National Labor Relations Act because they are "supervisors" within the meaning of 29 U.S.C. § 152(11). A hearing officer received evidence on this issue.

After the hearing, the Board's regional director concluded that Extendicare had "failed to meet its burden of demonstrating that either LPNs or RNs are supervisors . . . ."

---

[2]The union later clarified that it did not seek to include the director of nursing or the four nurse managers within the bargaining unit.

The regional director found that the floor nurses do not exercise independent judgment in assigning work to the nursing assistants, monitoring the assistants' performance, and directing assistants to perform particular tasks. He also found that the floor nurses have only a "reporting function" with respect to discipline of the nursing assistants, such function being insufficient to establish supervisory status.

The regional director ordered an election to determine whether Extendicare's floor nurses wished to be represented by the union. Extendicare requested review of the regional director's order, but the Board denied the request on the ground that it raised "no substantial issues warranting review." An election was held in August of 2003, and the union received a substantial majority of the votes cast.

The union then sought to initiate negotiations with Extendicare, but the company refused to participate in collective bargaining. The Board's general counsel filed a complaint alleging that Extendicare's refusal to bargain constituted an unfair labor practice, and the parties filed cross-motions for summary judgment.

The Board granted the general counsel's motion and denied Extendicare's, holding that the validity of the union's certification was or could have been litigated in the earlier representation proceeding. It ordered Extendicare to bargain with the union, whereupon Extendicare filed a petition for review. The Board filed a cross-application for enforcement of its order. Because Extendicare admits its refusal to bargain, our review focuses upon the

regional director's decision that floor nurses at the Galtier facility are not statutory supervisors. See *Beverly Enterprises v. NLRB*, 661 F.2d 1095, 1098 (6th Cir. 1981).[3]

II

Under the National Labor Relations Act, only "[e]mployees" have the right to bargain collectively through union representation. See 29 U.S.C. § 157. The Act's definition of "employee" specifically excludes "any individual employed as a supervisor." *Id.* § 152(3). An individual is a supervisor, under the Act, if: (1) he has authority to take any one of 12 enumerated actions, "or effectively to recommend such action"; (2) "the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment"; and (3) the authority is held "in the interest of the employer." *Id.* § 152(11); see *NLRB v. Kentucky River Community Care, Inc.*, 532 U.S. 706, 713 (2001).

The party claiming that an individual is a statutory supervisor bears the burden of proof on that issue. See *Kentucky River*, 532 U.S. at 710-12. In reviewing the Board's determination that Extendicare's floor nurses are not supervisors, "we must ascertain whether that determination is supported by substantial evidence on the record as a whole." *Caremore, Inc. v. NLRB*, 129 F.3d 365, 369 (6th Cir. 1997). "Substantial evidence" is evidence that a

---

[3]We shall refer to the regional director's decision as a decision of the Board. See *Beverly Enterprises*, 661 F.2d at 1098 n.2.

reasonable person might find adequate to uphold the Board's decision. See *NLRB v. Dole Fresh Vegetables, Inc.*, 334 F.3d 478, 484 (6th Cir. 2003).

Extendicare contends that its floor nurses perform three of the supervisory functions listed in § 152(11): "assign[ing]," "disciplin[ing]," and "responsibly . . . direct[ing]" other employees. The Board maintains that the nurses do not use independent judgment in assigning and directing nursing assistants and that the nurses do not discipline the assistants.

A

The evidence establishes that Extendicare's floor nurses have authority to assign nursing assistants to work with particular residents. Although full-time nursing assistants are assigned in accordance with a pre-determined rotation, the floor nurses must assign part-time nursing assistants. The nurses must also adjust the assistants' assignments when — as frequently happens — a nursing assistant is absent. Finally, the nurses may adjust the assistants' assignments to accommodate residents' needs or preferences. It is undisputed that the floor nurses hold this authority in the interest of their employer, Extendicare.

The Board found that the nurses' assignment of nursing assistants is "routine in nature and do[es] not require the use of independent judgment." Clearly, "[m]any nominally supervisory functions may be performed without the exercise of such a degree of judgment or discretion as would warrant a finding of supervisory status under the Act." *Kentucky River*, 532 U.S. at 713 (internal quotation marks and alterations omitted). The Board's

finding amounts to a determination that the degree of judgment used in assigning nursing assistants is insufficient to meet the Act's requirements.

Because "the statutory term 'independent judgment' is ambiguous with respect to the degree of discretion required for supervisory status," the Board is entitled "to determine, within reason, what scope of discretion qualifies." *Id.* (emphasis omitted). We cannot say that the Board acted unreasonably in determining that the discretion involved in the floor nurses' assignment of nursing assistants does not rise to the level of "independent judgment."

There is no evidence that assignment of part-time nursing assistants requires a significant degree of discretion. Nor does the record show that adjustment of assignments because of an assistant's absence requires the use of substantial judgment. (One nurse testified that she has the assistants draw straws if they are unable to agree on the distribution of the extra work.) Finally, there is testimony that adjustment of assignments to accommodate residents' needs and preferences is a routine matter, one that is often handled by the assistants themselves. We are satisfied that the Board's finding with respect to the nurses' assignment of work is supported by substantial evidence.

B

It is undisputed that Extendicare's floor nurses monitor the nursing assistants' work and direct them to perform particular tasks. Again, the nurses' authority is held in the interest of the employer. See *NLRB v. Health Care & Retirement Corp.*, 511 U.S. 571, 577-

78 (1994). But, again, the Board found no evidence that the floor nurses use independent judgment in exercising their authority.

As the Supreme Court has said, "the degree of judgment that might ordinarily be required to conduct a particular task may be reduced below the statutory threshold by detailed orders and regulations issued by the employer." *Kentucky River*, 532 U.S. at 713-14. The Board determined that Extendicare's floor nurses' discretion in directing assistants is so "circumscribed" by "doctor's orders, assignment sheets, and resident care plans" that the nurses do not exercise independent judgment. We think it was reasonable for the Board to conclude that there is no independent judgment involved in directing assistants to follow written orders and care plans. The floor nurses' direction of assistants goes beyond written orders and care plans, however.

All of the nurses who testified before the hearing officer — the union's witnesses as well as Extendicare's witness — said that the needs of residents can and do change, and that a particular resident's needs on a particular day are not always reflected in the assignment sheets and resident care plans. A floor nurse must assess the resident's needs, decide whether additional care is necessary, and direct an assistant to provide the necessary care. Given the consistent testimony of Extendicare's nurses, we do not think substantial evidence supports the Board's finding that written orders fully "circumscribe[]" the nurses' direction of assistants.

We think it clear, moreover, that directing nursing assistants to provide care that is not prescribed by written orders involves the exercise of independent judgment. In *Integrated Health Services of Michigan v. NLRB*, 191 F.3d 703, 707-08 (6th Cir. 1999), we rejected the Board's finding that nurses' assignment of additional duties to nursing assistants "in response to the needs of a given unit on a given day" was a matter of routine. And the Board itself has said that nurses use independent judgment in identifying tasks that need to be done and directing assistants to do them. See *Northcrest Nursing Home*, 313 NLRB 491, 504-05 (1993).[4]

C

We turn now to the floor nurses' authority to discipline nursing assistants, or "effectively to recommend" their discipline. The evidence shows that a nurse may take one of several actions upon observing misconduct on the part of an assistant. The nurse may decide the misconduct does not warrant any intervention. The nurse may speak to the assistant about the misconduct. The nurse may provide written "education" to the assistant.

---

[4]Before 1994, the Board frequently held that floor nurses exercised independent judgment in directing the care of nursing home residents but that the nurses did not exercise that judgment "in the interest of the employer." See *Beverly California Corp. v. NLRB*, 970 F.2d 1548, 1552 (6th Cir. 1992). The Supreme Court rejected the "false dichotomy" between "acts taken in connection with patient care and acts taken in the interest of the employer" in *Health Care & Retirement Corp.*, 511 U.S. at 577. Since 1994, when that case was decided, the Board has tended to find that floor nurses do not exercise independent judgment in directing resident care.

Or the nurse may initiate formal disciplinary proceedings by completing a "disciplinary action report." If the nurse chooses to initiate formal proceedings, the director of nursing or the facility's administrator investigates the nurse's allegations and determines an appropriate sanction.

The Board viewed the nurses' "writing up" of assistants' misconduct as a mere "reporting function" that "does not establish supervisory status." We do not think substantial evidence supports the Board's view. First, the record shows that Extendicare's floor nurses have discretionary authority to choose from among several remedial measures, only one of which involves completion of a disciplinary action report. The nurses decide independently whether a nursing assistant's misconduct is severe enough to warrant disciplinary proceedings. As we have held elsewhere, the use of independent judgment in writing up employees' infractions is a supervisory function. See *Kentucky River Community Care, Inc. v. NLRB*, 193 F.3d 444, 454 (6th Cir. 1999), *aff'd*, 532 U.S. 706 (2001).

Second, it is undisputed that a floor nurse's completion of a disciplinary action report initiates formal disciplinary proceedings against a nursing assistant. By making such a report, therefore, a nurse plays an effective part in the disciplinary process. The administrator or director of nursing makes the final decision as to whether, and how, an assistant will be disciplined, but "the relevant consideration" for purposes of § 152(11) "is effective recommendation . . . rather than final authority." *Caremore*, 129 F.3d at 370 (internal quotation marks omitted). "The [Act] does not preclude supervisory status simply

because [a] recommendation is subject to a superior's investigation." *Id.* (internal quotation marks omitted).

In a recent case involving similar facts, the Board held that a nurse's discretionary authority to "write up" other employees' infractions "clearly evince[d]" her status as a supervisor. *Wilshire at Lakewood*, 345 NLRB No. 80, 2005 WL 2451996, at *2. The nurse in *Wilshire*, like Extendicare's floor nurses, was responsible for monitoring other employees' work. If the nurse "determined that an employee committed a gross infraction of residential care, she could, at her discretion, document the infraction on a disciplinary form." *Id.* at *1. As in the case at bar, this documentation would trigger an investigation by managerial officials to determine "whether further disciplinary action . . . was warranted." *Id.*

In finding that the nurse's authority was supervisory for purposes of § 152(11), the Board stressed that she "exercised independent judgment in deciding whether to writeup an employee at all for a particular infraction." *Id.* at *3. The Board also emphasized that "the decision to issue a writeup actually initiated the disciplinary process." *Id.* "[T]he exercise of independent judgment in initiating an employer's disciplinary process constitutes a substantial role in the decision to discipline," the Board concluded, "and is indeed indicative of supervisory authority." *Id.*

The Board's decision in *Wilshire* supports our determination that Extendicare's floor nurses have more than a "reporting function" with respect to discipline of nursing assistants.

In the circumstances presented here, we are satisfied that writing up of assistants' infractions is the function of a statutory supervisor.

D

Our conclusion that Extendicare's floor nurses are statutory supervisors is further supported by "secondary indicia of supervisory authority." *Wilshire*, 2005 WL 2451996, at *2. Floor nurses are the highest-ranking employees in the building during the evenings, nights, and weekends. *Cf. Grancare, Inc. v. NLRB*, 137 F.3d 372, 376 (6th Cir. 1998) ("[T]he fact that charge nurses are the most senior ranking authority in the Nursing Department for twelve hours per day during the weekdays, and for most of the weekend[,] is significant"). Their formal job titles are "RN Supervisor" and "LPN Monitor." They receive training in supervisory skills. They sign various forms as a nursing assistant's "supervisor." All of these facts provide "corroborating evidence" of Extendicare's nurses' supervisory status. *Wilshire*, 2005 WL 2451996, at * 2.

On the record as a whole, we are satisfied that the nurses in question are statutory supervisors and that the Board's contrary determination is not supported by substantial evidence. Accordingly, the petition for review is **GRANTED**, the Board's bargaining order is **VACATED**, and the application for enforcement is **DENIED**.