136 F.3d 361
 157 L.R.R.M. (BNA) 2505, 135 Lab.Cas. P 10,119
 BEVERLY ENTERPRISES, Virginia, Incorporated, d/b/a Carter
Hall Nursing Home, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
BEVERLY ENTERPRISES, Virginia, Incorporated, d/b/a Carter
Hall Nursing Home, Respondent.
 Nos. 96-2779, 97-1098.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 6, 1997.
Decided Feb. 13, 1998.
 
 ARGUED: Andrew Allen Peterson, Jackson, Lewis, Schnitzler & Krupman, White Plains, NY, for Petitioner. Joseph Anthony Oertel, NLRB, Washington, DC, for Respondent. ON BRIEF: James D. Williams, Jr., Jackson, Lewis, Schnitzler & Krupman, White Plains, NY, for Petitioner. Frederick L. Feinstein, General Counsel, Linda Sher, Associate General Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, NLRB, Washington, DC, for Respondent.
 Before HALL and NIEMEYER, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 Review denied and order enforced by published opinion. Judge HALL wrote the opinion, in which Senior Judge PHILLIPS joined. Judge NIEMEYER wrote a dissenting opinion.
 OPINION
 PER CURIAM:
 
 
 1
 Beverly Enterprises, Virginia, Inc., petitions for review of an order of the National Labor Relations Board (NLRB) finding that it violated the National Labor Relations Act[1] by refusing to bargain with a certified unit at Beverly's Carter Hall Nursing Home in Dryden, Virginia. The NLRB cross-petitions for enforcement of the same order.
 
 I.
 
 2
 This case is very similar to Beverly Enterprises, West Virginia, Inc. v. NLRB, 136 F.3d 353 (4th Cir.1998), which we have decided by published opinion today. It involves an affiliate of the same company, the same setting, and the same issue--whether LPN charge nurses are "supervisors." There are a few minor differences in the facts, which we will summarize below.
 
 
 3
 The nursing home has fifty beds, divided into two wings of 32 and 18. There is no incumbent union for certified nurse assistants (CNAs) and service personnel; these employees were included in a single proposed unit with the LPN charge nurses. The proposed bargaining unit contains 40 employees, only six of whom are LPNs, and it would be represented by the United Mine Workers. The upper management of Carter Hall is small. In addition to the Administrator, there are a Director of Nursing, an Assistant Director of Nursing, an RN supervisor who works day shift on weekends, and heads of non-nursing departments. LPNs are the senior caregivers present two-thirds of the time.
 
 
 4
 The CNAs are instructed to look to the LPN charge nurse (one per shift) for supervision. The LPN can request--but not require--CNAs to work overtime or to come in for someone who is absent. The LPN has discretion to pick whatever CNA she wishes, and she does not have to ask permission from an RN before calling someone to come in.
 
 
 5
 Work schedules and assigments are set by the Director or Assistant Director of Nursing, but the LPNs can decide who takes lunch when, and the like. LPNs can "write up" CNAs for misconduct, but they have very rarely done so. Any discipline resulting from such a "write up" is the decision of upper management. Performance evaluations for CNAs are prepared by the Director and Assistant Director after consultation with the LPNs.
 
 
 6
 As in 96-2778, Beverly objected to including LPNs in the unit, its objection was denied,[2] and the union won the election handily. Beverly refused to bargain, even as to the 34 unit members who are clearly "employees" under the Act.[3] Unfair labor practice charges were brought, and the NLRB granted summary judgment against Beverly.
 
 
 7
 Beverly petitions for review; the NLRB cross-petitions for enforcement.
 
 II.
 
 8
 For the reasons discussed at much greater length in No. 96-2778(L), we deny review and grant enforcement of the NLRB's order. There is substantial support in the record for the NLRB's findings that Carter Hall's LPNs are primarily engaged in direct patient care, and that their limited "charge" duties are "routine" and do not require "independent judgment" as those terms are used in 29 U.S.C. § 152(11).
 
 
 9
 REVIEW DENIED; ORDER ENFORCED.
 
 NIEMEYER, Circuit Judge, dissenting:
 
 10
 Because I believe that the licensed practical nurses (LPNs) in this case are "supervisors" as defined by § 2(11) of the National Labor Relations Act (NLRA), and that therefore the Board erred in ordering Beverly Enterprises to bargain with a unit that includes these LPNs, I dissent.
 
 
 11
 Bargaining units that include supervisors are not protected by the NLRA, which gives only "employees" the right to organize and bargain collectively. See 29 U.S.C. § 157; see also Hanna Mining Co. v. District 2, Marine Eng'rs Beneficial Ass'n, 382 U.S. 181, 188, 86 S.Ct. 327, 331, 15 L.Ed.2d 254 (1965). The NLRA defines the term "supervisor" to include "any individual having authority, in the interest of the employer, to ... assign ... or discipline other employees, or responsibly to direct them, ... or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." 29 U.S.C. § 152(11). Employees thus qualify as supervisors for purposes of enforcing the Act when (1) they are authorized to perform or recommend at least one of twelve duties enumerated in § 2(11); (2) their authority promotes the interest of their employer; and (3) the exercise of the authority requires the use of independent judgment.
 
 
 12
 In the case before us, six LPNs, who function as "charge nurses" at the Carter Hall Nursing Home in Dryden, Virginia, were certified for inclusion in the bargaining unit. Because these LPNs are supervisors as defined by the Act, the employer contends that it was legal error for the Board to require the employer to bargain collectively with a bargaining unit which includes LPNs. I agree.
 
 
 13
 The employee handbook at Carter Hall describes the LPNs as "charge nurses" who are supervisors of certified nurse's aides (CNAs). The handbook states that whenever it indicates that a CNA go to his or her supervisor, it means that the CNA must go to the LPN charge nurse.
 
 
 14
 The LPNs' supervisory role is borne out by the authority given them and the functions they exercise. For a majority of the work week--the second and third shifts--at Carter Hall, LPNs are the highest level of supervisor present and are the only persons directing the work of the CNAs. While the director of nursing assigns CNAs to given shifts, this schedule does not assign a particular CNA to a given group of patients' rooms. Rather, the LPN charge nurse determines which CNA is assigned which group of rooms, based on the LPN's knowledge of each CNA's skills, experiences, and personality, and the LPN's assessment of which patients would best be matched with the CNA. Moreover, if a given CNA is unable to make her shift, when the director of nursing or the assistant director of nursing is not on the site, the LPN is authorized to request a CNA to work overtime to fill the gap or to call other CNAs until an available CNA is found. The LPNs have authority to allow CNAs to leave a shift early in cases of emergency or for serious rule infractions. In addition, the LPNs can write up disciplinary incidents involving CNAs and can recommend that a CNA be fired. The record in this case reveals that this authority was exercised on at least one occasion when an LPN ordered a CNA to leave for a rule infraction and recommended that the CNA be fired. The CNA was fired, with the ultimate disciplinary decision made by the nursing home administrator.
 
 
 15
 Finally, and by no means least importantly, for the majority of the work week when the LPN is the highest-ranking person at the facility, she must exercise unspecified judgment in cases of emergencies with respect to the home. This responsibility includes the authority to evacuate the home.
 
 
 16
 Under these facts, it is readily apparent that LPNs are authorized to perform several of the functions or to recommend actions with respect to several of the functions defined in § 2(11) of the NLRA. Only one such authorization is required to satisfy the definition. Moreover, LPNs exercise judgment on behalf of Carter Hall with respect to all of these activities. These facts bring the LPNs in this case directly under our precedent finding them to be supervisors. See NLRB v. St. Mary's Home, Inc., 690 F.2d 1062 (4th Cir.1982); Beverly Cal. Corp. v. NLRB, 976 F.2d 725, 1992 WL 223815 (4th Cir.1992) (unpublished disposition) (Judges Hall, Butzner, and Legg finding that LPNs in similar circumstances are supervisors); see also Caremore, Inc. v. NLRB, 129 F.3d 365 (6th Cir.1997) (holding the ability to recommend that other employees be fired makes LPNs supervisors).
 
 
 17
 For the foregoing reasons, I would grant the petition for review and deny the NLRB's petition to enforce its order.
 
 
 
 [1]
 29 U.S.C. § 151 et seq
 
 
 [2]
 Initially, the regional director relied on the NLRB's theory that charge nurses acted "in the interest of patients" rather than of the employer. After the Supreme Court decided NLRB v. Health Care & Retirement Corp., 511 U.S. 571, 114 S.Ct. 1778, 128 L.Ed.2d 586 (1994), which rejected this theory, the case was remanded for reconsideration. On remand, the regional director adhered to his holding that the LPNs are not "supervisors" because they lack "independent judgment" in performing allegedly supervisory tasks
 
 
 [3]
 The union won the election 33-5, so the votes of the six LPNs were not essential to the victory. The NLRB points out that, even if the LPNs are not appropriate members of the unit, Beverly has no excuse for failing to bargain over the terms and conditions of employment of the remaining personnel. Beverly counters that the participation of the "supervisors" in prounion activity may have coerced the eligible employees to cast their votes for the union. See NLRB v. Manufacturer's Packaging Co., 645 F.2d 223 (4th Cir.1981); Turner's Express, Inc. v. NLRB, 456 F.2d 289 (4th Cir.1972). Because we enforce the NLRB's order in its entirety, we need not address these contentions