BEVERLY ENTERPRISES, WEST VIRGINIA, INCORPORATED, d/b/a Glasgow Rehabilitation and Living Center, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

American Federation of Labor and Congress of Industrial Organizations (AFL–CIO), Amicus Curiae.

---

308

National Labor Relations Board, Petitioner,

v.

Beverly Enterprises, West Virginia, Incorporated, d/b/a Glasgow Rehabilitation and Living Center, Respondent.

American Federation of Labor and Congress of Industrial Organizations (AFL–CIO), Amicus Curiae.

Nos. 96–2778, 97–1037.

United States Court of Appeals, Fourth Circuit.

Argued June 2, 1998.

Decided Jan. 19, 1999.

ARGUED: Andrew Allen Peterson, Jackson, Lewis, Schnitzler & Krupman, White Plains, NY, for Petitioner. Linda Jill Dreeben, N.L.R.B., Washington, D.C., for Respondent. ON BRIEF: James D. Williams, Jr., Thomas V. Walsh, Jackson, Lewis, Schnitzler & Krupman, White Plains, NY, for Petitioner. Frederick L. Feinstein, General, Linda Sher, Associate General, Aileen A. Armstrong, Deputy Associate General, Joseph A. Oertel, N.L.R.B., Washington, DC, for Respondent. Jonathan P. Hiatt, AFL–CIO, Washington, D.C.; David M. Silberman, Laurence Gold, Washington, D.C., for Amicus Curiae.

Before WILKINSON, Chief Judge, and WIDENER, MURNAGHAN, ERVIN, WILKINS, NIEMEYER, HAMILTON, LUTTIG, WILLIAMS, MICHAEL, MOTZ, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

Petition for review granted and cross-application for enforcement denied by published opinion. Judge NIEMEYER wrote the majority opinion, in which Chief Judge WILKINSON and Judges WIDENER, WILKINS, HAMILTON, LUTTIG, and WILLIAMS joined.

## OPINION

NIEMEYER, Circuit Judge:

After Beverly Enterprises, West Virginia, Inc., refused to bargain with a unit certified by the National Labor Relations Board that included licensed practical nurses who are functioning as "charge nurses," the Board found that Beverly Enterprises had committed unfair labor practices under §§ 8(a)(1)

and 8(a)(5) of the National Labor Relations Act ("NLRA"). Beverly Enterprises filed this petition for review, arguing that licensed practical nurses were "supervisors" under § 2(11) of the Act and thus were not entitled to organize and bargain collectively pursuant to § 7. For the reasons given in the substantively similar case, *Beverly Enterprises, Virginia, Inc. v. NLRB*, 136 F.3d 361 (4th Cir. 1998), which we have also decided today, we hold that these licensed practical nurses are "supervisors" under the Act. Accordingly, we grant Beverly Enterprises' petition and deny the Board's application for enforcement of its order.

I

Because this case is slightly distinguishable factually from *Beverly Enterprises, Virginia, Inc. v. NLRB*, 136 F.3d 361 (4th Cir. 1998), we summarize the most pertinent facts presented in this case.

Beverly Enterprises, West Virginia, Inc., operates Glasgow Rehabilitation and Living Center, a nursing home which serves 120 patients housed in two wings of equal size. An Administrator runs the nursing home. The nursing department is run by a Director of Nursing, who reports to the Administrator, and an Assistant Director of Nursing, who reports to the Director of Nursing. A registered nurse holds the position of Care Plan Coordinator and two additional registered nurses serve as RN Supervisors. Direct patient care is provided by 24 licensed practical nurses ("LPNs"), who report to the Director of Nursing and the RN Supervisors, and 50–60 certified nursing assistants, who report to the LPNs and the RN Supervisors.

The Glasgow nursing home operates on a three-shift schedule, with shifts from 7:00 a.m. to 3:00 p.m., 3:00 p.m. to 11:00 p.m., and 11:00 p.m. to 7:00 a.m. The Director and Assistant Director of Nursing, as well as the Care Plan Coordinator, work the first shift (8:00 a.m. to 4:00 p.m.) each weekday, while the two RN Supervisors work the first and second shifts each weekday. On weekends an Assistant Activities Director or a department head works for four hours each Saturday and Sunday. During all remaining times, which amount to almost one-half of the total hours in the week, the LPNs are the most senior staff at the nursing home. While the LPNs "maintain overall operation of the home" during this time, they are able to contact a registered nurse who is "on call."

In addition to performing a wide array of patient care tasks, the LPNs occupy the position of charge nurse and thus are "in charge" of the nursing home during the hours when the registered nurses are not at the facility. According to the LPNs' job performance requirements, LPNs at Glasgow "will serve as Charge Nurse[s] of the unit to which assigned and will direct the care of that unit within the framework of the policies of this nursing home [,i]n addition to participating in and supervising all care of patient needs and giving or directing that care which is of a skilled nature." LPNs must "maintain overall operation of the home in the absence of the supervisor, director of nurses, and administrator, notifying any of them when necessary." And LPNs must "initiate assignments to aides ... and change if necessary upon ensuring proper quality of ... care."

The certified nursing assistants' job performance requirements provide that they must "adher[e] to instructions issu[]ed by the nurse." They also "[w]ork[] under supervision" and are supervised by the charge nurse, whether that nurse is a registered nurse or an LPN.

Although the LPNs direct the certified nursing assistants in their work, their discretion in the assignment of work and the ability to transfer certified nursing assistants from one wing to the other is somewhat constrained by the certified nursing assistants' collective bargaining agreement. Thus, for example, when replacing an absent certified nursing assistant or assigning certain work tasks, the supervising LPN must call certified nursing assistants in the order of seniority specified by the collective bargaining agreement. It appears undisputed, however, that there are some collateral tasks which LPNs may, in their discretion, assign to certified nursing assistants, such as work in the special medicare unit.

While the collective bargaining agreement controls decisions involving permanent transfers of certified nursing assistants and prescribes break and lunch times, it still remains the duty of the LPNs to monitor certified nursing assistants to ensure that they complete their assignments and do them properly. When new certified nursing assistants arrive, it is the LPNs' responsibility to determine when the new employees are sufficiently trained to accept full assignment.

The LPNs may also undertake various forms of disciplinary action against certified nursing assistants. In particular, while LPNs may not suspend or discharge certified nursing assistants without prior approval of the Director or Assistant Director of Nursing, the LPNs may informally counsel them and may give them either an oral or a written warning. And although this power has not been used, the LPNs are also authorized to suspend a certified nursing assistant on the spot when the nursing assistant is suspected of patient abuse.

Finally, when the Administrator, the Director of Nursing and the Maintenance Supervisor are not at the facility and a fire alarm occurs, "the senior charge nurse will be in charge of the facility and the senior charge nurse will direct fire alarm procedures."

In 1994, the United Steelworkers of America, the Union which represents Glasgow's service employees, maintenance employees, and certified nursing assistants, petitioned the National Labor Relations Board to recognize the Union as the LPNs' collective bargaining representative. Beverly Enterprises contested the Union's authority to represent the LPNs, arguing that the LPNs were supervisors, not entitled to unionize under § 7 of the NLRA, 29 U.S.C. § 157. The Regional Director rejected Beverly Enterprises' argument and directed an election.

Following the election, which the Union won, the Union attempted to bargain with Beverly Enterprises, but Beverly Enterprises refused. The Board thereafter found that Beverly Enterprises had committed unfair labor practices in violation of §§ 8(a)(1) and 8(a)(5) of the NLRA, 29 U.S.C. § 158(a)(1) & (5).

On appeal from the Board's order, a divided panel of this court granted the Board's petition for enforcement, holding that Beverly Enterprises' LPNs were not supervisors under the NLRA. *See Beverly Enterprises, West Virginia, Inc. v. NLRB,* 136 F.3d 353 (4th Cir.1998). By order dated March 30, 1998, the full court vacated that panel opinion and ordered that the case be reheard *en banc.*

## II

Beverly Enterprises argues that the new unit certified by the NLRB was contrary to the NLRA because it consisted of supervisors. It also argues that it was deprived of due process when the hearing officer, who initially heard this case, declined to allow Beverly Enterprises to question certain witnesses for pro-union bias.

Addressing Beverly Enterprises' main point that its LPNs are supervisors, we apply the principles set forth in the companion case, *Beverly Enterprises, Virginia, Inc. v. NLRB,* No. 96–2779(L), also decided today, to conclude that the LPNs in this case are likewise supervisors and are not appropriately included in collectively bargaining units. The record clearly demonstrates that for almost one-half of the working hours at the Glasgow nursing home, LPNs are the most senior staff present. During this time, they are responsible for maintaining the overall operation of the home and for directing the work of the certified nursing assistants. They are responsible for assigning collateral tasks to nursing assistants at their discretion, for monitoring the nursing assistants to ensure that they do their jobs properly, for counseling and writing up nursing assistants' performance, for determining when nursing assistants are ready to handle full assignment, and for immediately suspending nursing assistants who are suspected of patient abuse. The authority and responsibilities given the LPNs at Glasgow are not sufficiently distinguishable from those articulated in our companion case to require a different result. Accordingly, we hold that the LPNs at Glasgow are supervisors within the definition of 29 U.S.C. § 152(11).

Because we reach this conclusion, we need not address Beverly Enterprises' due process argument.

Accordingly, Beverly Enterprises' petition for review is granted and the NLRB's decision is reversed. The NLRB's application for enforcement of its order is denied.

*IT IS SO ORDERED.*